

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> LEUCADIA GROUP, LLC, <br><br>         Debtor. | BAP No. SC-20-1066-GFB <br><br> Bk. No. 3:16-bk-5474-CL |
| CALDARELLI HEJMANOWSKI PAGE & LEER LLP, <br><br>         Appellant, <br><br> v. <br><br> RONALD E. STADTMUELLER, Trustee; UAS INVESTMENTS, LLC, <br><br>         Appellees. | Adv. No. 3:18-ap-90169-CL <br><br> **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellant Caldarelli Hejmanowski Page & Leer, LLC ("CHPL")

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

appeals the bankruptcy court's order granting Chapter 7[1] trustee Ronald E. Stadtmueller's ("Trustee") motion for summary judgment and denying CHPL's cross-motion for summary judgment, and the bankruptcy court's judgment disallowing CHPL's claim. The bankruptcy court determined that CHPL's claim, which it acquired from UAS Investments, LLC ("UAS"), was barred by claim preclusion.[2] In a prior case in the Georgia state court, UAS dismissed its contract claims against debtor Leucadia Group, LLC ("Debtor") with prejudice. The bankruptcy court properly applied Georgia law in determining that the claim was barred by claim preclusion. We AFFIRM.

## FACTS

### A.    Prepetition Events

Debtor is a California LLC, formed in 2013 by Robert Miller ("Miller") and Sean Frisbee ("Frisbee") for the purpose of obtaining commercial and government contract work in aerospace engineering. Until January 2015, Miller and Frisbee were each 50% owners of Debtor, and Miller served as president.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] For clarity, we refer to "claim preclusion" rather than "res judicata." *See Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).

After Debtor was formed, Miller began discussions with Daryl Moody ("Moody") about opportunities to invest in Debtor. In December 2013, Debtor entered into an agreement with Moody's company, Mast Nine, Inc. ("Mast Nine"), which gave Mast Nine the option to make a convertible loan of up to $1,575,000, to be secured by Debtor's assets (the "Loan Agreement"). Under the Loan Agreement, if Mast Nine loaned the full $1,575,000, it could convert its debt into a one-third ownership interest. Mast Nine subsequently assigned its rights under the Loan Agreement to UAS, a newly formed affiliate controlled by Moody. Pursuant to the Loan Agreement, UAS loaned Debtor a total of $650,000.

During 2014, disputes arose between Miller, Frisbee, and Moody over Debtor's operation. By the end of 2014, Debtor's financial condition had deteriorated, and in January 2015, Miller informed Frisbee and Moody that Debtor did not have the financial capability to continue operating. Miller then proposed to UAS that he would dissolve Debtor unless UAS agreed to take either $50,000 on its $650,000 loan, or an 8% interest in Debtor.

On January 16, 2015, Frisbee appointed Moody as a director of Debtor, and together, they removed Miller as president. That same day, UAS and Frisbee filed a complaint in Georgia state court against Debtor and Miller for breach of contract and injunctive relief (the "Georgia Action"). UAS and Frisbee asserted that Miller's communication to UAS was an unqualified repudiation of the Loan Agreement and a breach of

3

contract.

A month later, UAS and Frisbee filed an amended complaint, removing Debtor and asserting claims against only Miller. The affidavit of the process server indicated that the summons, complaint, and amended complaint were served on Miller at his residence on March 14, 2015. Although Miller was purportedly removed as Debtor's president in January 2015, he was listed as the service agent for Debtor with the California Secretary of State and remained so until May 7, 2015. Frisbee later dismissed all his claims in the action without prejudice and was removed as a plaintiff.

Miller then moved to disqualify UAS's counsel based on asserted conflicts arising from its prior representation of Miller and its concurrent involvement in defending Debtor in a separate California suit. He argued that omitting Debtor from the amended complaint was insufficient under Georgia law to remove Debtor as a defendant.

In response, UAS filed an unopposed motion to dismiss Debtor pursuant to Ga. Code § 9-11-41 and submitted a proposed order dismissing Debtor with prejudice. The state court entered the order dismissing all claims against Debtor with prejudice in May 2015.

In October 2017, the state court granted partial summary judgment in favor of Miller. UAS and Miller then entered into a settlement and dismissed the remainder of the case with prejudice in July 2018.

4

**B.     The Bankruptcy Case And Adversary Proceeding**

While the Georgia Action was pending, UAS filed an involuntary chapter 11 petition against Debtor. The bankruptcy court entered an order for relief and converted the case to chapter 7 in March 2017. UAS filed a proof of claim for $716,010.61 based on the Loan Agreement.[3] UAS later partially assigned its claim to CHPL.

In September 2018, Trustee filed an adversary complaint against UAS and CHPL seeking disallowance of the claims arising from the Loan Agreement.[4] Trustee asserted that Debtor's obligations under the Loan Agreement were extinguished because UAS dismissed Debtor with prejudice in the Georgia Action.

CHPL filed an answer denying the allegations. Trustee and UAS then entered into a stipulation whereby UAS agreed to not defend the action and to allow entry of a default and entry of judgment consistent with any eventual judgment against CHPL.

**C.     The Summary Judgment Motions And The Court's Ruling**

In November 2018, Trustee filed a motion for summary judgment,

---

[3] UAS asserted that its claim was secured in the amount of $696,010.61 and unsecured in the amount of $20,000.

[4] Trustee also sought to avoid UAS's UCC-1 financing statement under §§ 544 and 548, and a declaration that the security interest was unenforceable due to an insufficient collateral description. Because the bankruptcy court disallowed the entire claim, it did not determine whether any part of the claim was secured.

asserting that UAS's claim was barred by claim preclusion. Trustee argued that Debtor's liability under the Loan Agreement was at issue in the Georgia Action because UAS treated the purported repudiation as an immediate breach of contract. Trustee also argued that dismissal with prejudice operated as an adjudication on the merits and, under Georgia law, UAS was precluded from asserting claims against Debtor based on the Loan Agreement.

CHPL opposed the motion and filed a cross motion for summary judgment. CHPL argued that claim preclusion was inapplicable because Debtor was not served with the complaint, never appeared in the Georgia Action, and therefore was not a party. CHPL also argued that at the time of dismissal no claims against Debtor were pending because the complaint had been amended, and by effectively removing Miller and dropping its claims against Debtor, UAS manifested an intent to continue performance under the Loan Agreement. Finally, CHPL argued that if UAS's claim was barred, the bankruptcy court should dismiss the involuntary bankruptcy case.

The bankruptcy court issued a tentative ruling stating its intention to grant Trustee's motion. At the hearing, the bankruptcy court focused on whether Debtor was a "party" in the Georgia Action and whether the state court had personal jurisdiction for purposes of claim preclusion. The court determined that CHPL's request to dismiss the case should be filed in the

main case, not an adversary proceeding, and denied the request without prejudice. The bankruptcy court then requested additional briefing on the issues of whether Georgia law required personal jurisdiction for purposes of claim preclusion and whether Debtor was served with the summons and complaint such that the state court had personal jurisdiction.

After the parties submitted their briefs, the bankruptcy court entered a comprehensive written order granting summary judgment in favor of Trustee, and entered judgment disallowing the claim of UAS and its assignee, CHPL. The court determined that Miller was Debtor's registered agent and therefore, under Georgia law, actual service on Miller was sufficient to confer personal jurisdiction over Debtor and make it a party to the case. CHPL timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158(a).

## ISSUE

Whether the bankruptcy court erred by granting Trustee's summary judgment motion.

## STANDARD OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. *Lewis v. Kaelin (In re Cresta Tech. Corp.)*, 583 B.R. 224, 227 (9th Cir. BAP 2018). We also review the bankruptcy court's application of claim

preclusion de novo. *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 139 (9th Cir. BAP 2007). Under a de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *In re Cresta Tech. Corp.*, 583 B.R. at 227.

## DISCUSSION

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-moving party. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

CHPL argues that the bankruptcy court erred by granting summary judgment in favor of Trustee and by denying its motion for summary judgment, because under Georgia law, UAS and CHPL were not barred by claim preclusion from asserting their claim against Debtor.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires bankruptcy courts to give the same preclusive effect to a state court judgment that the judgment would have in the courts of the state in which it was rendered. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996). Georgia law

8

therefore determines the preclusive effect of the dismissal in the Georgia Action. If Georgia law precludes UAS from filing a subsequent suit against Debtor based on the Loan Agreement, UAS's claim in the bankruptcy case must be disallowed.

Under Georgia law, a voluntary dismissal with prejudice "operates as an adjudication upon the merits and bars the right to bring another action on the same claim." *Fowler v. Vinyard*, 405 S.E.2d 678, 680 (Ga. 1991) (citations omitted). An order dismissing a defendant with prejudice is not a judgment, but it does adjudicate the "non-liability of that defendant to the plaintiff." *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 528 S.E.2d 508, 510 (Ga. 2000).

"As far as the parties involved in the voluntary dismissal with prejudice are concerned, the dismissal constitutes a final disposition of the action so dismissed, and [claim preclusion] will bar any attempt . . . to litigate the dismissed claim against the dismissed party under another guise." *Id.* at 511. Dismissal with prejudice bars relitigation of "all questions which might have been litigated in the action and is a final disposition, barring the right to bring another action on the same claim." *Hutcheson Med. Ctr. v. Scealf*, 422 S.E.2d 20, 22 (Ga. App. 1992).

The record is clear that UAS voluntarily dismissed all claims against Debtor with prejudice. Those claims included contract claims based on the Loan Agreement. Therefore it is barred under Georgia law from relitigating

those claims.

CHPL argues that because voluntary dismissals are not required to be made with prejudice under Ga. Code § 9-11-41, UAS's dismissal with prejudice was a mistake. However, a voluntary dismissal with prejudice bars relitigation of claims even if the plaintiff could have dismissed without prejudice. *Dep't of Transp. v. Revco Disc. Drug Ctrs., Inc.*, 746 S.E.2d 631, 634 (Ga. App. 2013) ("[A] simple mistake by a party as to the . . . legal result of an act which he performs, is no ground for either defensive or affirmative relief.") (citation omitted).

## A.    The Dismissal Order In the Georgia Action Is Sufficient For Purposes of Claim Preclusion

Three elements must be satisfied to apply claim preclusion under Georgia law: (1) an identity of the cause of action; (2) an identity of the parties or their privies; and (3) a previous adjudication on the merits by a court of competent jurisdiction. *Coen v. CDC Software Corp.*, 816 S.E.2d 670, 675 (Ga. 2018).

CHPL argues that Debtor was not served with the summons and complaint and did not appear in the Georgia Action, and therefore, it was not a "party," and the state court was not a "court of competent jurisdiction" because it lacked personal jurisdiction over Debtor.

### 1. The Dismissal Order Bars UAS From Asserting Claims Against Debtor Regardless of Whether Debtor Was Served In the Georgia Action

CHPL argues that Georgia law requires service on a defendant in order for a judgment entered against that defendant to support claim preclusion. But, because a dismissal with prejudice bars the plaintiff and not the defendant, it is not evident that Georgia law would require the defendant to be served or make an appearance in order to make the dismissal effective against the plaintiff in a future action.

Voluntary dismissals are governed by Ga. Code § 9-11-41 and can be effected either through a notice or stipulation filed by the plaintiff, or by a court order. Ga. Code § 9-11-41(a)(1)-(2). Although voluntary dismissals under § 9-11-41 may be with or without prejudice, the filing of a second notice of dismissal operates as an adjudication on the merits and is with prejudice. Ga. Code § 9-11-41(a)(3). Regardless of under which provision of § 9-11-41(a) the dismissal is made, "a dismissal 'with prejudice' should have the same effect." *Fowler*, 405 S.E. 2d at 680.

Under the "two-dismissal rule," when a plaintiff files a second notice of dismissal, "the controlling factor is the [second] voluntary dismissal of the same cause of action rather than the named party defendants." *Walker v. Mecca*, 739 S.E.2d 450, 451 (Ga. App. 2013) (quoting *Belco Elec. v. Bush*, 420 S.E. 2d 602 (Ga. App. 1992) (applying prior version of the statute)). A

11

second notice of dismissal bars the plaintiff from asserting the dismissed claims regardless of whether the defendant was served, whether the court had personal jurisdiction over the defendant, or even whether the defendant was named in the complaint. *See id.* at 451; *Harris v. Sampson*, 290 S.E.2d 165, 167 (Ga. App. 1982) ("[I]t is the mere filing of the complaint followed by a voluntary dismissal that brings the statute into play, not that a defendant must be served and be forced to answer or suffer default.").

The result should be no different where the dismissal with prejudice is by court order on plaintiff's motion rather than by the two-dismissal rule. *See Fowler*, 405 S.E.2d at 680 (reasoning that a voluntary dismissal with prejudice operates as res judicata whether by order of the court or by statute under the two-dismissal rule).

But, even if Georgia law were to require service on a defendant in order to make the voluntary dismissal with prejudice binding on the plaintiff, improper service and personal jurisdiction are affirmative defenses which are waivable by the defendant. *See Burch v. Dines*, 600 S.E.2d 374, 377 n.5 (Ga. App. 2004) (lack of personal jurisdiction based on defective process and insufficient service may be waived); Ga. Code § 9-11-8(c); (12)(1)(B).

If Debtor was not served and did not waive its affirmative defenses, it retains those defenses and the ability to waive them. *Focus Healthcare Med. Ctr., Inc. v. O'Neal*, 558 S.E.2d 818, 820 (Ga. App. 2002). Until such time as

12

the court rules on an asserted affirmative defense, the action may be voidable, but it is not void. *Hedquist*, 528 S.E.2d at 512; *see also Harris*, 290 S.E.2d at 167 ("The mere fact that a recovery may not have been authorized under the dismissed actions does not render the suit void where the trial court had jurisdiction of the cause of action.").

If Debtor was not served in the Georgia Action as CHPL argues, then Debtor, and not CHPL, retains the right to assert—or waive—the defenses of insufficient service and lack of personal jurisdiction.

### 2. Service Was Effective On Debtor and the State Court Had Jurisdiction

Although service on Debtor was unnecessary for the state court to enter an order dismissing the claims with prejudice, the bankruptcy court did not err by determining that Debtor was served under Georgia law.

CHPL argues that Debtor was not served because (1) service on Miller did not effect service on Debtor under the holdings of *Chrison v. H & H Interiors, Inc.*, 500 S.E.2d 41 (Ga. App. 1998) and *All Risk Insurance Agency, Inc. v. Rockbridge Sanitation Co.*, 319 S.E.2d 527 (Ga. App. 1984); and (2) the summons was not directed to Debtor and Debtor never received notice of service of process.

Under Georgia law, service on a corporation can be made by delivering a copy of the summons and complaint to the registered agent of the entity. Ga. Code § 9-11-4(e)(1). The record is clear that Miller was

13

served at his personal address and at the time of service, he was Debtor's registered agent. Miller's personal residence was the proper address for serving Debtor's registered agent.

Neither *Chrison* nor *All Risk Insurance* required the bankruptcy court to determine that service was not proper. In *Chrison*, there was no listing with the Secretary of State and the summons was left with a regional manager at the entity's place of business in Tennessee. 500 S.E.2d at 42. As a result, the court found that the entity was not served at all. *Id.* at 45 n.7. In *All Risk Insurance*, the individual was served at his address in North Carolina, but because the service address for the corporate defendant's agent was in Georgia, service on the individual was not effective as to the corporation. 319 S.E.2d at 528.

The bankruptcy court also properly determined that despite the fact that the process server's affidavit indicated that only Miller and not Debtor was served, "it is the fact of service which confers jurisdiction, and not the return, and the latter may be amended to speak the truth." *Montgomery v. USS Agri-Chem. Div.*, 270 S.E.2d 362, 365 (Ga. App. 1980). If "the fact of service appears, and the officer's return is irregular or incomplete, it should not be treated as no evidence, but rather as furnishing defective proof of the fact of service." *Id.* at 364. The process server's affidavit evidences the fact of service on Debtor's registered agent at the address listed with the Secretary of State. This is sufficient to confer jurisdiction under Georgia law

14

and to provide Debtor with notice of the Georgia Action.

**B.      The Bankruptcy Claim Is the Same Claim as the Georgia Action**

CHPL argues that the bankruptcy claim is not identical to the claim in the Georgia Action because UAS amended its complaint to remove Debtor before serving it on Miller. CHPL contends that unlike a claim in bankruptcy, the Georgia Action was based on an anticipatory breach which required an absolute and unqualified refusal to perform. CHPL reasons that once it became clear to UAS that Frisbee intended for Debtor to perform under the Loan Agreement, UAS amended the complaint to drop its claims against Debtor.

For purposes of claim preclusion under Georgia law, a cause of action is "'the entire set of facts which give rise to an enforceable claim,' with special attention given to the 'wrong' alleged." *Coen*, 816 S.E.2d at 675 (quoting *Morrison v. Morrison*, 663 S.E.2d 714, 719 (Ga. 2008)). If the operative facts required to state a claim in the prior case encompass the operative facts required to state a claim in the second case, the causes of action are identical. *Id.*

In the Georgia Action, UAS alleged that Debtor and Miller breached the Loan Agreement by repudiating the contract and by failing to pay according to its terms. Under Georgia law, repudiation of a contract gives the innocent party an election of remedies—either keep the contract in force or immediately sue for damages. *Szabo Assocs. Inc. v. Peachtree-*

15

*Piedmont Assocs.*, 234 S.E.2d 119, 120 (Ga. App. 1977). UAS immediately sued, thereby electing to treat the repudiation as an anticipatory breach of contract.

It is immaterial that UAS amended its complaint because claim preclusion prevents relitigation of claims "which have already been adjudicated, or which could have been adjudicated" between the same parties. *Crowe v. Elder*, 723 S.E.2d 428, 430 (Ga. 2012). The order dismissing Debtor from the Georgia Action expressly stated that "all claims" against Debtor were dismissed with prejudice.

The "wrong" alleged by UAS in the Georgia Action was Debtor's failure to pay under the Loan Agreement. Debtor's obligation to pay under the Loan Agreement is precisely what UAS asserted in its bankruptcy claim. Because the "entire set of facts" giving rise to UAS's claim in the Georgia Action encompassed Debtor's liability under the Loan Agreement, the causes of action are identical for purposes of claim preclusion.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order granting Trustee's motion for summary judgment and disallowing CHPL's claim.